# In the United States Court of Federal Claims

No. 24-810

Filed: November 21, 2025

**APRIL HARRY N. QUINONES and JANETH R. QUINONES,**

       *Plaintiffs*,

v.

**THE UNITED STATES,**

       *Defendant.*

*April Harry N. Quinones* and *Janeth R. Quinones*, Pembroke Pines, FL, Pro se.

*Elizabeth B. Villareal*, Attorney of Record, with *Melissa A. Hammer*, Trial Attorney, Tax Division, Court of Federal Claims Section, and *Christopher J. Williamson*, Assistant Chief, U.S. Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM ORDER AND OPINION

**TAPP, Judge.**

    The Court previously found that pro se Plaintiffs, April Harry Quinones and Janeth R. Quinones ("Mr. and Mrs. Quinones" or "the Quinoneses"), "actively attempted to defraud the Internal Revenue Service, the United States, and this Court" by submitting a fraudulent joint tax return for the 2021 tax year.[1] *Quinones v. United States*, 176 Fed. Cl. 435, 436 (2025). Now, Mr. and Mrs. Quinones defend against the United States' effort to claw back an erroneously issued 2020 refund in the amount of $444,323.86. (*See* Pls.' Resp., ECF No. 57). In doing so, the Quinoneses contest no material facts. Instead, they claim that the refund was proper, based on the same methods of falsified income and withholdings, calculable only through their theory of "intangibles" already debunked by the Court's prior trial and subsequent Opinion.[2] *See*

---

[1] This Memorandum Order and Opinion refers to the United States as "Defendant" instead of "Counter-Claimant" and Mr. and Mrs. Quinones as "Plaintiffs" instead of "Counter-Defendants" to maintain consistency with the parties' briefing. (*See* Def.'s Mot. for Summ. J. at 1 n.1, ECF No. 56; Pls.' Resp., ECF No. 57).

[2] The Court held a trial on April 2, 2025, limited to the Quinoneses' underlying claim and the United States' Special Plea in Fraud defense pursuant to 28 U.S.C. § 2514. (*See* Trial Tr., ECF

*Quinones*, 176 Fed. Cl. at 437–38. The Court has once again drawn the conclusion that Mr. and Mrs. Quinones have vastly overreported their actual income and taxes paid to the Internal Revenue Service ("IRS")—this time, for the 2020 tax year. The IRS subsequently issued an erroneous refund of $444,323.86. No genuine issue of material fact precludes the United States from reclaiming its refund amount, plus statutory interest. Accordingly, the Court **GRANTS** the United States' Motion for Summary Judgment, (Def.'s Mot. for Summ. J., ECF No. 56), relating to its counterclaim.[3]

The Quinoneses' tax reporting pattern developed over years and, according to Mr. Quinones, originated in his vague understanding of the operating "margin" used by his father in the Philippines decades earlier. (Trial Tr., 72:11–74:20, ECF No. 48).[4] The Quinoneses filed their 2020 tax return on December 6, 2021. (Def.'s Ex. D at A-15[5] (2020 Account Transcript), ECF No. 56-1). On their 2020 Form 1040, the Quinoneses reported that they had a taxable wage income of $3,659,528, and $470,902 in federal income tax withheld. (Def.'s Ex. F at A-25, A-26 (2020 Tax Return (lines 1 and 25a))). Based on these amounts, the Quinoneses requested a

---

No. 48). The Court's prior opinion includes a fulsome background of this case. *Quinones v. United States*, 176 Fed. Cl. 435, 436–39 (2025). Insomuch as they are relevant here, the Court reiterates those findings.

[3] The Court denied an earlier effort by Mr. and Mrs. Quinones to dismiss the United States' counterclaim. (Pls.' Mot. to Dism. Countercl., ECF No. 37; Op. Denying Pls.' Mot. to Dism. Countercl. at 1, ECF No. 41 (finding that the counterclaim was "timely filed and sufficiently supported.")). At trial, the Court concluded that the Quinoneses' 2021 tax refund claim and related Complaint were fraudulent and therefore forfeited pursuant to 28 U.S.C. § 2514. *Quinones*, 176 Fed. Cl. at 440. Neither trial nor the Court's Post-Trial Opinion addressed the United States' counterclaim. *See id.* at 436 n.1. After judgment was entered against the Quinoneses, the United States moved for summary judgment on its counterclaim pursuant to RCFC 56, arguing that the 2020 refund was erroneous. (*See* Def.'s Mot. for Summ. J. at 1).

[4] In 2018, after jettisoning the assistance of a tax professional, (*see* Trial Tr., 26:1–26:23), the Quinoneses first used "intangibles" to inflate their actual income and withholdings by multiplying each dollar, withholding, and expense by six, (*id.*, 125:23–25). By 2020, they had increased the multiplier to eighteen. (*Id.*, 126:4–5). By 2021, the Quinoneses were utilizing a multiplier of fifty-four. (*Id.*, 126:7–8). Regardless of the year, the gambit was similar—multiply each dollar earned, each deduction, and each dollar withheld by that year's chosen multiplier. For example, in 2020, the Quinoneses paid $62,734.16 for medications, but reported this expense to the IRS as $1,129,214.88—a multiplying factor of eighteen. (Def.'s Ex. B at A-11 (Pls.' Reply to Def.'s Second Set of Interrogs.), ECF No. 56-1).

[5] Defendant's exhibits were filed as one consecutively paginated attachment to their Motion for Summary Judgment. For consistency, the Court also uses the Defendant's page numbers, which contain a hyphenated letter and number.

refund of $904,325. (Def.'s Ex. K at A-80, A-81[6] (Pls.' February 28, 2024 Letter to IRS Requesting Remainder of 2020 Refund Claim)). To support their 2020 Form 1040, Mr. and Mrs. Quinones submitted two W-2 Forms in their 2020 tax return—one for Mr. Quinones' work at Fur Systems, LLC ("Fur Systems"), and one for Mrs. Quinones' work at Vistra Corporate Services ("Vistra Corp."). (Def.'s Ex. F at A-69–72). These W-2 Forms were created by the Quinoneses. (Def.'s Ex. E at A-19–21 (Pls.' Resp. to Def.'s First Set of Req. for Admis.)).

Mr. Quinones reported that he made $1,713,046 in taxable wages in 2020 and had $265,931 in federal income tax withheld. (Def.'s Ex. F at A-69 (boxes 1 and 2)). His W-2 also reported tax withholdings of $106,209 for Social Security and $24,839 for Medicare.[7] (*Id.* (boxes 4 and 6)). A portion of Mr. Quinones' self-reported W-2 appears as follows:

| efile GRAPHIC print - DO NOT PROCESS | ORIGINAL DATA - Production | | DLN: 30221688236451 |
|---|---|---|---|
| a Employee's social security number: ___5020 | OMB No. 1545-0008 | Safe, accurate, FAST! Use e-file | Visit the IRS website at www.irs.gov/efile. |
| b Employer identification number (EIN): ___7749 | | 1 Wages, tips, other compensation: 1,713,046 | 2 Federal income tax withheld: 265,931 |
| c Employer's name, address, and ZIP code: FUR SYSTEMS LLC, 18209 SOUTHWEST 3RD STREET, PEMBROKE PINES, FL 33029 | | 3 Social security wages: 1,713,046 | 4 Social security tax withheld: 106,209 |
| | | 5 Medicare wages and tips: 1,713,046 | 6 Medicare tax withheld: 24,839 |
| | | 7 Social security tips | 8 Allocated tips |
| d Control number | | 9 | 10 Dependent care benefits |
| e Employee's first name and initial: APRIL HARRY N   Last name: QUINONES   Suff. | | 11 Nonqualified plans | 12a See instructions for box 12 |
| | | 13 Statutory employee / Retirement plan / Third-party sick pay | 12b |
| | | 14 Other | 12c |
| f Employee's address and ZIP code: 18209 SW 3RD ST, PEMBROKE PINES, FL 33029 | | | 12d |
| 15 State   Employer's state ID number | 16 State wages, tips, etc.   17 State income tax | 18 Local wages, tips, etc.   19 Local income tax | 20 Locality name |
| Form W-2   Wage and Tax Statement   2020 | | | Department of the Treasury—Internal Revenue Service |
| Copy B—To Be Filed With Employee's FEDERAL Tax Return. This information is being furnished to the Internal Revenue Service. | | | |

(*Id.*). These numbers are false; the income and withholdings grossly inflated utilizing what the Quinoneses characterize as "intangibles." (*See* Def.'s Ex. B at A-9, A-11 (Pls.' Resp. to Def.'s Second Set of Interrogs.); Def.'s Ex. E at A-19–21). Fur Systems *actually* paid Mr. Quinones $95,169.21 in taxable wages in 2020, and withheld $14,773.96 in federal income tax, $5,900.49

---

[6] Defendant's Exhibit K is also labeled as "Plaintiffs' Exhibit E-1" and Joint Exhibit 21.

[7] The United States notes that it would have been impossible for Mr. Quinones to pay $106,209 in Social Security tax in 2020 because the maximum wage subject to the tax was $137,700 at a rate of 6.2 percent—meaning that the maximum possible Social Security tax in 2020 was $8,537. (Def.'s Mot. for Summ. J. at 4 n.3 (citing Def.'s Ex. G at A-74)).

in Social Security tax, and $1,379.95 in Medicare tax. (Def.'s Ex. H at A-75 (boxes 1, 2, 4, and 6) (Fur Systems W-2, 2020 Tax Year)). Mr. Quinones' actual W-2 is as follows:



(*Id.*).

Similarly, in the false 2020 W-2 Mrs. Quinones submitted to the IRS, she reported that she made $1,946,482 in taxable wages, and had $204,970 in federal income tax withheld. (Def.'s Ex. F at A-71 (boxes 1 and 2)). She also reported tax withholdings of $142,444 for Social Security and $33,314 for Medicare:



(*Id.* (boxes 4 and 6)). Like her husband's sham document, Ms. Quinones' W-2 magnified her actual income and withholdings. Vistra Corp. *actually* paid Mrs. Quinones $108,138 in wages and withheld $11,387 in federal income tax, $7,914 in Social Security tax, and $1,851 in Medicare tax. (Def.'s Ex. I at A-76 (boxes 1, 2, 4, and 6) (Vistra Corp. W-2, 2020 Tax Year)). Mrs. Quinones' real W-2 is pictured below:

[W-2 Wage and Tax Statement 2020 for JANETH REYES-QUINONES, 18209 SW 3RD ST., PEMBROKE PINES, FL 33029, from VISTRA CORPORATE SERVICES COMPANY, 6555 SIERRA DR., IRVING, TX 75039. Gross pay 134,872.81; Fed. income tax withheld 11,387.24; Social Security tax withheld 7,913.55; Medicare tax withheld 1,850.75; Wages 108137.90; Social security wages 127637.90; Medicare wages and tips 127637.90.]

(*Id.*). As a result of the bloated income and withholdings reported by Mr. and Mrs. Quinones, the IRS credited them with $470,902 in "W-2 or 1099 withholding," based on the $265,931 and $204,970 reportedly withheld from their wages.[8] (Def.'s Ex. D at A-16).

The IRS issued the Quinoneses a refund of $431,973, plus $12,350.86 in overpayment interest, for a total of $444,323.86. (*Id.* at A-17). The Quinoneses reported receiving the refund on March 30, 2022. (Def.'s Ex. K at A-80 ("On March 30, 2022, we received a refund in the amount of $444,323.86.")). According to the United States, and not controverted by the Quinoneses, the refund "was calculated by taking the $470,902 in income tax withholdings plaintiffs had reported, adding the adjusted $1,800 Recovery Rebate Credit, and then subtracting $33,845 in federal income tax due . . . and subtracting $6,884 in 'additional tax' . . . ." (Def.'s Mot. for Summ. J. at 9–10). Against this background, the United States moved for summary judgment, urging the Court to find that the Quinoneses' 2020 refund was erroneously issued.

The Court may grant summary judgment if the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A genuine dispute exists if there

---

[8] The United States notes that "[t]here is a $1 difference between the withholdings reported on the Forms W-2 and the withholdings reported on the Form 1040, line 25(a), and carried over to the account transcript" which is due to rounding. (Def.'s Mot. for Summ. J. at 5 n.5). The Court finds this discrepancy negligible.

is sufficient evidence for the nonmoving party to win at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986) (Finding a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."). The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party seeking to establish a genuine dispute of material fact must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ." RCFC 56(c)(1)(A). Facts are material if they "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248.

While "inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion[,]" *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), summary judgment may still be granted when the party opposing the motion submits evidence that "is merely colorable . . . or is not significantly probative." *Anderson*, 477 U.S. at 249–50 (citations omitted). Courts may only grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita Elec. Indus. Co., Ltd. v. United States*, 475 U.S. 574, 587 (1986). "A trial court is permitted, in its discretion, to deny even a well-supported motion for summary judgment, if it believes the case would benefit from a full hearing." *United States v. Certain Real & Personal Prop. Belonging to Hayes*, 943 F.2d 1292 (11th Cir. 1991).

To prevail in an erroneous refund action, the United States "must prove that: (1) a refund of a sum certain was made to a taxpayer; (2) the tax refund was erroneously issued; and (3) the lawsuit to recover the erroneously issued taxes was timely filed." *See United States v. Brokemond*, 304 F. App'x 765, 766 (11th Cir. 2008) (citing 26 U.S.C. § 7405(b)); *United States v. Foster*, 51 F. App'x 915, 917–18 (4th Cir. 2002); *United States v. Com. Nat'l Bank of Peoria*, 874 F.2d 1165, 1169 (7th Cir. 1989); *United States v. Dean*, 945 F. Supp. 2d 1110, 1114 (C.D. Cal. 2013) (adding a fourth factor: "that the taxpayers were not entitled to the refund which the government seeks to recover.") (citations omitted). All relevant circumstances are met here.

A significant portion of the Quinoneses' response to the United States' Motion for Summary Judgment simply outlines their disagreements with the Court's Post-Trial Opinion—which relates solely to the 2021 tax year and the forfeiture of their underlying claim. (*See* Pls.' Resp. at ¶ 1 ("The Plaintiffs deny the Defendant's allegations that the Plaintiffs filed a 2021 Form 1040 that 'contains entirely imaginary numbers[.]'") (cleaned up); ¶ 5 ("The Plaintiffs also respectfully dissent with the court's opinion . . . .")). Mr. and Mrs. Quinones do not raise any genuine disputes of material fact relating to their 2020 tax return in their initial Answer[9], or in their Response. (*See* Pls.' Answer, ECF No. 37; Pls.' Resp.); RCFC 56(a).

---

[9] The Quinoneses' response to the United States' counterclaim, (ECF No. 37), is styled as both an answer to the counterclaim and a motion to dismiss. The Court has denied the Motion to Dismiss, (*See* Op. Denying Pls.' Mot. to Dism. Countercl.), but certain paragraphs of the Quinoneses' filing are directly responsive to the arguments alleged in the United States'

The Quinoneses state generally that they did not intend to defraud the United States in their tax returns. (Pls.' Resp. at ¶ 2; Pls.' Answer at ¶ 1(b)). To advance this argument, the Quinoneses pose a number of hypothetical questions, such as: "[w]hy would a prudent person like Mr. Quinones submit a W2 with a different amount if he knew that the IRS have the copies of the W2?" and "[i]f a driver stops at the red light even though there are no other cars or pedestrians on the way, does he need to explain to the traffic enforcer why he stops? No." (Pls.' Resp. at ¶¶ 2–3). Such conjecture is unconvincing. Notably, Mr. and Mrs. Quinones do not believe they should have to explain themselves to the IRS or the Court. (*Id.* at ¶ 3 ("Plaintiffs should not be obliged to explain to the IRS why they did such assessment if it is based on the Internal Revenue Code (IRC) unless otherwise required. It should be safe to assume that the IRS knows the IRC.")). Such reasoning does not actually call into question any material facts alleged by the United States. While the Quinoneses certainly *disagree* with the United States' characterization that they misrepresented material facts in their tax returns, (*id.* at ¶ 4), that disagreement is not premised on fact.[10]

Mr. and Mrs. Quinones cite to communications they received from the IRS to justify their receipt of the erroneous refund. (Pls.' Resp. at ¶ 7; Pls.' Answer at ¶¶ 1(a)–(b)). For example, on October 27, 2021, the IRS sent the Quinoneses a letter stating in part: "[w]e received your income tax return and are in the process of verifying its accuracy." (Pls.' Resp. at ¶ 7 (citing Pls.' Ex. H-3 at 2, ECF No. 57-3)). Likewise, they also cite a CP12 Notice they received from the IRS on December 6, 2021, informing them that there were "miscalculations on [their] 2020 Form 1040" and the IRS had "made changes to [their] return that correct these errors." (Pls.' Resp. at ¶ 7 (citing Def.'s Ex. J at A-77–79). A CP12 Notice is simply used to correct a "mathematical or clerical error . . . ." I.R.C. § 6213(b)(1) (West). However, the Quinoneses argue that these communications from the IRS acted as an implicit approval of their 2020 refund amount. (Pls.' Resp. at ¶ 7; Pls.' Answer at ¶ 1 (also referring to a May 13, 2024 letter the Quinoneses received from the IRS, (ECF No. 37-1)). This is wishful thinking.

While the United States offers no explanation for how the IRS—an agency comprised of more than 90,000 employees that cost $18.2 billion to operate in Fiscal Year 2024—simply paid out a nearly half-a-million dollar refund claim without *some* effort to confirm its validity, such a

---

counterclaim. (*See* Pls.' Answer at ¶ 1(a)–(b)). The Court will consider these portions of the Quinoneses' filing referred to as "Pls.' Answer" in its summary judgment analysis.

[10] Mr. and Mrs. Quinones claim they made "honest mistakes" because in their view "the IRS failed to deny or explain it to them." (Pls.' Resp. at ¶ 4). They also disagree with both the United States' *and* the Court's interpretation of the relevant sections of the tax code, (*Id.* at ¶ 6 (citing I.R.C. §§ 31, 37)), and argue that they are entitled to separate refundable credits under both I.R.C. § 31 and § 37. (*Id.*). Even if such an interpretation of the tax code was remotely accurate, they are questions of law—not fact—and have no bearing on the matter presently before the Court.

rationalization is not required.[11] It is enough that "[t]he federal tax system largely relies on each taxpayer's self-assessment, meaning the taxpayer's calculation of the amount she owes in a tax return filed with the IRS along with the indicated tax payment." *Farhy v. Comm'r.*, 100 F.4th 223, 226 (D.C. Cir. 2024). Mr. and Mrs. Quinones brought this quagmire upon themselves by presenting bogus documents, which the IRS incorrectly relied on. Simply because the Quinoneses successfully extracted $444,323.86 from the federal government does *not*, however, mean they get to keep it.

The Quinoneses' $444,323.86 refund was composed of multiple credits and refunds, explained by their 2020 Account Transcript. (Def.'s Ex. D at A-15–17). The Quinoneses specifically take issue with one of those components—a Recovery Rebate Credit, which was a COVID-19 tax credit given to taxpayers who had not previously received some or all of the stimulus payments. (Pls.' Resp. at ¶ 8; Def.'s Mot. for Summ. J. at 8); *see* I.R.C. § 6428 (West). Mr. and Mrs. Quinones claimed a Recovery Rebate Credit of $3,250 on line 30 of their 2020 Form 1040. (Def.'s Ex. F at A-26). According to the United States, the Quinones family would be entitled to a combined payment of $4,700 for 2020. (Def.'s Mot. for Summ. J. at 8). By the time the Quinoneses had filed their 2020 tax return, the IRS had already issued them a $2,900 stimulus payment. (Def.'s Ex. D at A-16). The IRS believed that the Quinoneses were entitled to an additional $1,800 credit (the difference between $2,900 already paid and the $4,700 they were entitled to). (Def.'s Mot. for Summ. J. at 8). This was communicated to the Quinoneses via the December 6, 2021, CP12 Notice. (*Id.*; Def.'s Ex. J at A-77–79).

The Quinoneses disagree with the United States' argument that "[E]ven using plaintiffs' actual wage income (not the multiplied figures), plaintiffs probably made too much to be eligible for the credit." (Pls.' Resp. at ¶ 8 (citing Def.'s Mot. for Summ. J. at 12)). To substantiate this, Mr. and Mrs. Quinones state: "[t]he Plaintiffs *believe* that even when the face value of their income is used, they will still have deductions from business expenses and medical expenses that would still result in a negative [Adjusted Gross Income]." (Pls.' Resp. at ¶ 8 (emphasis added)). Mr. and Mrs. Quinones provide no support for this assertion whatsoever. The Quinoneses' belief that their negative adjusted gross income entitles them to recover a stimulus payment is not material to whether their 2020 tax refund was issued erroneously.[12] Their 2020 tax documents were comprised exclusively of fraudulent numbers, and there is no universe in which a rational trier of fact could possibly find otherwise. *See Matsushita Elec.*, 475 U.S. at 587.

The Quinoneses do not contest that they received a refund of $444,323.86 for their 2020 tax year. (Def.'s Ex. K at A-80). Nor do they refute the fact that they submitted entirely false information to the IRS—they readily admit that the numbers in their tax return were based on

---

[11] *See* DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE DATA BOOK 2024, Publ'n 55B (Rev. 5-2025), 71–74, https://www.irs.gov/pub/irs-pdf/p55b.pdf [https://perma.cc/422H-TW8C].

[12] The United States also asserts that the Quinoneses actually *owe* $10,792.42 in taxes for 2020. (Def.'s Mot. for Summ. J. at 13). Keeping true to their non-responsive litigation strategy, Mr. and Mrs. Quinones do not directly refute this either.

"intangibles" designed to inflate their actual income and withholdings in 2020. (*See* Def.'s Ex. B at A-9, A-11; Def.'s Ex. E at A-19–21). Urging the Court now that the "err[ors] in their interpretation of the law" were merely "honest mistakes" is untenable. (Pls.' Resp. at ¶ 4). The Quinoneses cite no applicable statute, rule, or advice of a tax professional justifying their use of "intangibles" to reap a large cash reward for their benefit—payable by other American taxpayers. The IRS based the Quinoneses' refund calculations on imaginative but false documents executed under the penalty of perjury. (Def.'s Ex. E at A-19). Even if the Court could conclude that the Quinoneses acted in good faith, which it cannot do under these facts, good faith is not a defense to the United States' counterclaim.[13] The Quinoneses received a refund to which they were not entitled.

The United States has successfully shouldered its burden to demonstrate the absence of any issues of material fact, and that it should prevail on its counterclaim. *Celotex*, 447 U.S. at 323; *Brokemond*, 304 F. App'x at 766; *Com. Nat'l Bank of Peoria*, 874 F.2d at 1169. A plain comparison of Mr. and Mrs. Quinones' self-reported and actual 2020 W-2 Forms makes it impossible for the Court to draw any conclusion *other* than that Mr. and Mrs. Quinones misrepresented material facts to the IRS, and the IRS issued an erroneous refund based on that information. The Court therefore:

(1) **GRANTS** the United States' Motion for Summary Judgment on Plaintiffs' 2020 Tax Year Counterclaim.

(2) **ORDERS** Plaintiffs, Mr. and Mrs. Quinones, to pay the United States **$444,323.86**, plus statutory interest. Statutory interest shall be calculated from March 30, 2022, in accordance with I.R.C. §§ 6602, 6621.

Given that there are no other pending matters in this case, the Clerk is **DIRECTED** to **ENTER** final judgment in favor of the United States.

**IT IS SO ORDERED.**

s/   David A. Tapp
DAVID A. TAPP, Judge

---

[13] Whether the Quinoneses intended to defraud the United States when they submitted their fabricated 2020 tax documents is not relevant to determining if the refund was issued erroneously. Generally, the tax code provides for the award of interest when a taxpayer has caused the erroneous refund in any way. *See* I.R.C. § 6404(e)(2) (West). Because the refund at issue here was directly caused by the Quinoneses' false self-reported numbers, an award of statutory interest is appropriate. *See id*; I.R.C. § 6602 (West) (interest on an erroneous refund recoverable by suit is calculated "at the underpayment rate established under section 6621 from the date of the payment of the refund."); I.R.C. § 6621 (West); *See also* I.R.C. § 7405 (West) (action for recovery of erroneous refunds).